# WALTER
### *v.*
# THE BALTIMORE & OHIO RAILROAD COMPANY.

PRACTICE; MOTION FOR NEW TRIAL; APPEAL; DISMISSAL OF; RAIL-
ROADS ; CROSSINGS ; NEGLIGENCE ; CONTRIBUTORY
NEGLIGENCE.

1. At common law a motion for a new trial suspended the entry of
judgment until the motion was disposed of.

2. Where a judgment is entered during the time within which a mo-
tion for a new trial may properly be made, the operation of the
judgment is suspended, for the purposes of appeal, until a mo-
tion so made is disposed of.

3. An appeal will not be dismissed because entered from an order
overruling a motion for a new trial instead of from the judgment,
where the citation is expressly directed against the judgment,
and the appeal bond recites that the appeal is prosecuted to re-
verse the judgment.

4. In pushing or backing cars at a railroad crossing, the company is
bound to use extraordinary care to prevent accidents, by sound-
ing suitable signals and taking other proper precautions.

5. Where in suit against a railroad company for damages for injur-
ies to the plaintiff from being struck by a train at a crossing,
the testimony showed negligence on the part of the defendant,
but was contradictory as to whether or not there was contribu-
tory negligence on the part of the plaintiff, it was *held*, revers-
ing the judgment of the lower court, that the question of con-
tributory negligence should have been submitted to the jury.

No. 352.   Submitted March 18, 1895.   Decided April 1, 1895.

HEARING on an appeal by the plaintiff from a judgment
on a verdict directed by the court in a suit for damages for
personal injuries.   *Reversed.*

The COURT in its opinion stated the facts as follows :

This is an action to recover damages for an injury alleged
to have been suffered by the plaintiff, Charles Walter, in
consequence of the negligence of the defendant's agents,
under the following circumstances.

The plaintiff and two other persons, late on the night of November 9, 1892, were driving in a buggy, eastwardly on F street northeast, in this city, towards their places of residence. They had occasion to cross the track of the defendant's railroad, where it intersected F street, between North Capitol street and First street east. When they were in the act of crossing the track, a car or train of cars was backed southwardly on the track and struck and demolished the buggy, and the plaintiff was thrown out and badly injured. The declaration alleges that no notice or warning was given of the movement of the cars, and that the injury resulted from the want of proper care in their management and movement. The defendant filed the usual plea of not guilty.

At the trial, upon the conclusion of the testimony for the plaintiff, the defendant's counsel requested the court to instruct the jury to return a verdict for the defendant, which the court refused to do.

Testimony was then offered on the part of the defence, and upon its conclusion the defendant's counsel moved the court, on all the evidence given to the jury, to instruct the jury to return a verdict for the defendant. This instruction was granted, and an exception taken, upon which the case is brought to this court.

The verdict was rendered on the 14th of February, 1894, and judgment entered on it immediately. On the 16th of February, a motion was made for a new trial, *for errors of law in the rulings of the trial justice.* On the 10th of March, the motion was overruled, and on the same day the plaintiff requested the clerk to enter an appeal from the order of the court overruling the motion to set aside the verdict, and to issue a citation for the defendant. A citation was issued on the same day, and served on the 14th of March, and on the 22d of the same month an appeal bond was filed and approved.

In this court, a preliminary motion was made to dismiss the appeal, on the grounds, first, that it was taken more than

twenty days after the rendition of the final judgment in the court below; and, secondly, that the appeal was not taken from that final judgment, but only from the order of the trial justice overruling the motion for a new trial, which was not appealable.

*Mr. Andrew B. Duvall* and *Messrs. Cook & Sutherland* for the appellant:

1. The motion for a new trial was filed within four days after the entry of the judgment. Until that motion was disposed of by the Court the judgment was not final. *Hetzel* v. *B. & O. R. R.*, 3 Mack. 338; *vide Goddard* v. *Ordway*, 101 U. S. 745. At common law, during the pendency of that motion the judgment was not appealable. Thompson on Trials, sec. 2730; *Truett* v. *Legg*, 32 Md. 147. The present rule of the Supreme Court of the District of Columbia (Law Rule, No. 53), as far as the legal effect of the judgment as to its finality for the purposes of appeal is concerned, merely formulates alike the common law and the uniform construction of the old rule of that court. The motion retains the cause in the trial court, and while pending prevents final judgment within the provisions regulating appeals. *Turner* v. *Rooker*, 2 Dana, 334; *Reynolds* v. *Horine*, 13 B. Mon. 235; *Hearson* v. *Grandine*, 87 Ill. 115; *Turvey* v. *Wells*, 4 Cal. 106; *Brown* v. *Evans*, 18 Fed. Rep. 59; *N. Y. R. R.* v. *Doane*, 105 Ind. 92.

If a motion for a new trial does not have this effect, unwarranted and embarrassing results must ensue. Unless disposed of within twenty days (which was rarely the case in actual practice and not within appellant's control) the motion must have been abandoned *ex necessitate;* for an appeal with supersedeas would remove the case and transfer it to this court, depriving the court below of any jurisdiction over the judgment, however erroneous it might confess it upon hearing the motion.

The act of Congress establishing the Court of Appeals,

February 9, 1893, provides (Sec. 7) that any party aggrieved by any judgment of the Supreme Court of the District of Columbia may appeal therefrom to that court; but it does not require, nor does Rule No. X, nor any other rule, require an appeal to be in writing, or in open court, or entered in the minutes of the court or to be recorded.

The appeal is in exactly the same category as to its *modus operandi* as appeals to the Supreme Court of the United States. That court, after a full discussion, held that there was no necessity to enter a written order of appeal, and that the citation is notice of appeal where the appeal is not in open court. *Hudgins* v. *Kemp*, 18 How. 537. The court also held in the earlier case of *Masten* v. *Hunter*, 1 Wheat. 304, that it was not necessary that all of the steps required to give it jurisdiction should even be on file in the court below, and certainly need not appear to be of record there. See also *United States* v. *Adams*, 6 Wall. 101.

In the case at bar, the written appeal was from the order overruling the motion to set aside the verdict which was the foundation of the judgment. The motion for a new trial was alone for errors of law in the rulings of the presiding justice. Appellant appealed and ordered citation. The citation procured by him was to show cause why the judgment should not be corrected. But the record shows there was an appeal from the judgment as such and distinctively; that specific fact is expressly certified of record by the justice in his approval of the bond of appeal.

2. There was clear proof both of the defendant's negligence and absence of contributory negligence on the part of the plaintiff. Certainly it cannot be said that the only reasonable view of the evidence and of its every intendment is utterly opposed to plaintiff's right to recover. *Railroad Co.* v. *Carrington*, 3 App. D. C. 101 ; *Railroad Co.* v. *Powers*, 149 U. S. 43 ; *Gardner* v. *Railroad Co.*, 150 U. S. 349.

*Messrs. Hamilton & Colbert* for the appellee :

1. The defendant's motion to dismiss should be granted.

It is settled by an unbroken line of decisions in the Supreme Court of the United States, that the granting or refusal of a motion for a new trial is always addressed to the discretion of the trial justice and cannot be reviewed by an appellate court, and this was the rule at common law. *Henderson* v. *Moore,* 5 Cr. 11 ; *Blunt* v. *Smith,* 7 Wheat. 248 ; *Ins. Company* v. *Wilson,* 8 Pet. 291 ; *Warner* v. *Norton,* 20 How. 448 ; *Ewing* v. *Howard,* 7 Wall. 499 ; *Erskine* v. *Hohnbach,* 14 Wall. 613 ; *Young* v. *United States,* 95 U. S. 641 ; *Railroad Co.* v. *Twombly,* 100 U. S. 78 ; *Railroad Co.* v. *Chicago, etc., Co.,* 132 U. S. 191 ; *Fishburn* v. *Railroad Co.,* 137 U. S. 60.

2. In the case at bar the court directed a verdict because, as stated in its opinion, the facts and circumstances surrounding the injury to the plaintiff, as shown by all of the testimony, were such as to convince any reasonable mind, first, that the defendant was at the time of the accident in the exercise of that degree of care and caution which the facts and situation required ; and, second, that the plaintiff was himself guilty of contributory negligence.

From the entire evidence it appears that the defendant was doing what it had, under all the circumstances of the case, a perfect right to do, and in the doing of it exercised at every point of its operations the degree of care required by law.

3. The plaintiff was guilty of contributory negligence. It is the ordinary duty of a person crossing a railroad track to stop, look, and listen. This duty is as imperative when an approaching train cannot be seen or heard as when it can, and such is his duty whether he thought the train was due or not. If the undisputed evidence discloses any negligence on the part of the plaintiff, it is error to submit it to the jury, and the failure of a traveler crossing a railway track at grade to stop and look and listen is not merely evidence of negligence, but negligence *per se,* and a question for the court. *Railroad Co.* v. *Fortney,* 90 Pa. St. 324; *Railroad Co.* v. *Ritchie,* 102 Pa. St. 425 ; *Railroad Co.* v.

*Bentley*, 66 Pa. St. 30 ; *Dean* v. *Railroad Co.*, 39 A. & E. R. R. Cases, 697 ; *Turner* v. *Railroad Co.*, 74 Mo. 603 ; *Carlin* v. *Railroad Co.*, 37 Iowa, 316 ; *Lavering* v. *Railroad Co.*, 6 A. & E. R. R. Cases, 274 ; *Railroad Co.* v. *Adams*, 1 Id. 376 ; *Matti* v. *Railroad Co.*, 32 Id. 71 ; *Railroad Co.* v. *Clark*, 173 Ind. 168 ; *Brickell* v. *Railroad Co.*, 42 A. & E. R. R. Cases, 107; *Foy* v. *Railroad Co.*, 47 Md. 86; *Railroad Co.* v. *Burns*, 51. Md. 125; *Railroad Co.* v. *Stricker*, 51 Md. 47 ; *Lewis* v. *Railroad Co.*, 38 Md. 589 ; *Railroad Co.* v. *Price*, 29 Md. 420; *Railroad Co.* v. *Savington*, 71 Md. 590; *Railroad Co.* v. *Hoagland*, 66 Md. 149 ; *Deitrich* v. *Railroad Co.*, 58 Md. 347.

The rule laid down by the State courts has been approved by the Supreme Court of the United States. *Railroad Co.* v. *Houston*, 95 U. S. 697 ; *Schofield* v. *Railroad Co.*, 114 U. S. 615 ; *Elliott* v. *Railroad Co.*, 150 U. S. 245.

Mr. Justice Cox, of the Supreme Court of the District of Columbia, who sat with the court in the place of Mr. Justice MORRIS, delivered the opinion of the court :

It is claimed that the judgment was properly entered immediately on the verdict, under a rule of the Supreme Court of the District, although the rules also allowed four days for filing a motion for a new trial, and it was in fact, filed two days after verdict, whereas the appeal was not taken until the 10th day of March, more than twenty days after verdict and judgment.

At common law, as we all know, a motion for a new trial suspended the entry of judgment until the motion was disposed of. Evans Practice, p. 327 ; *Truett* v. *Legg*, 32 Md. 147.

A short examination will show that when this case was tried, there was neither law nor rule of court that authorized the entry of judgment before the motion for a new trial was overruled.

The act of March 3, 1863, establishing the Supreme

Court of the District of Columbia, provided for two kinds of motions for a new trial. One was a motion for a new trial on a *bill of exceptions,* which was required to be heard in the first instance in the General Term. The other was in the following form, viz.: Exceptions taken during the trial might be simply entered on the minutes of the justice, and he might, in his discretion, entertain a motion, to be made on his minutes, to set aside a verdict and grant a new trial, *upon exceptions,* or for insufficient evidence, or for excessive damages, and when such motion was made and heard upon the minutes, an appeal to the General Term might be taken from the decision, in which case a *bill of exceptions,* or *case,* was required to be settled in the usual manner. Although the law was silent on the subject, it was not supposed to preclude a party from moving for a new trial, before the trial justice, on the usual common law grounds of misconduct of the jury, newly discovered evidence, &c., in which case there would be no appeal from the ruling of the justice. But the two proceedings above mentioned, expressly authorized, were both in the nature of a writ of error to review errors committed during the trial, upon bills of exceptions, before any judgment was rendered upon the verdict, which was an anomaly in practice. The effect was that a creditor was prevented from getting his judgment and thus acquiring a lien upon his debtor's property, until after the latter's appeal was decided, pending which his property might be disposed of.

To obviate this inconvenience, the court assumed, in the exercise of its power to establish such rules as it might deem necessary for regulating the practice of the court (Sec. 770, R. S. D. C.), to provide, by rule, that the entry of judgment should not be delayed by motions for new trials.

In the rules adopted in 1875, it was provided, in Rule 62, that no motion for a new trial *on a bill of exceptions* shall suspend the entry of judgment or the issuing and levy of execution; but a *stay of execution* shall be entered if, &c., &c.; and again, that no motion for a new trial *for any other*

*cause* shall suspend the entry of judgment and issuing of execution, unlesss the party moving shall execute an undertaking, &c., &c.

But in 1886, the rules were revised, and the latter part of the above rule was omitted from the new ones, leaving as the only rule which allowed the judgment to be entered notwithstanding the pendency of a motion for a new trial, that which applied to motions for a new trial *on bills of exceptions* to be heard in the first instance in the General Term. The motion for a new trial in this case was not of that description, so that, even if that rule had continued in force at the time of the trial, it would not have been applicable, and no other rule would have applied but that of the common law, according to which a motion for a new trial suspends the entering of judgment until it is overruled.

But in addition to all this, it must be remembered that all rules of the Supreme Court of the District on this subject are necessarily repealed by the act of Congress of February 9, 1893, establishing this court.

That act abolished the appellate jurisdiction of the General Term of the Supreme Court, and put an end to all appellate proceedings in the form of motions for a new trial, the only proceedings to which the rules we have been discussing applied, and substituted therefor appeals from final judgments at special term. It left nothing of the old practice except, perhaps, the motion for a new trial, to be entertained by the trial justice, upon his minutes, but without appeal, to which the rules of 1886 had no application. It therefore left the Supreme Court in special term to be governed by the common law, according to which, as already mentioned, a motion for a new trial suspended the entry of judgment.

Therefore, the entry of judgment in this case, on the same day as the verdict, while the plaintiff had still four days within which to file his motion for a new trial, and which, in fact, he did file in time, was an inadvertence and irregularity.

The court again revised its rules in the spring of 1894, and the fact was then brought to their attention that the clerk had been in the habit, notwithstanding the changes in the law and the rules, of entering judgment in all cases immediately after verdict; and the court then adopted a rule that judgment should not be entered in any case until after motions for new trial or in arrest should be decided. The practice of the clerk was erroneous, and the judgments so entered could not have any effect except from the time when they could be properly entered; that is, after the motions suspending their entry were decided.

But even if the judgment had been properly entered in the manner in which it was, under a valid and subsisting rule, it would still be subject to the motion for a new trial, as was held by the Supreme Court of the District, in the case of *Hetzel* v. *Railroad Co.*, 3 Mackey, 338, and would necessarily be a mere judgment *nisi* and not final until the motion was decided.

This was held by the Supreme Court of the United States, where a final judgment was rendered and a motion was made during the term to set it aside, in the case of *Memphis* v. *Brown*, 94 U. S. 715, Chief Justice Waite saying: "The motion made during the term to set aside the judgment of March 2, suspended the operation of that judgment, so that it did not take final effect, *for the purposes of a writ of error*, until May 20, when the motion was disposed of."

The appeal, then, was taken in this case on the very day on which the judgment became operative.

The form of the appeal is also objected to. As entered by the clerk, it was, it is true, only an appeal from the *order* overruling the motion for a new trial. But the order to the clerk was unnecessary and may be simply ignored. The citation issued to the defendant was to show cause why the *judgment* rendered against the appellant should not be corrected, and the appeal bond recites that the appeal is prosecuted to reverse the *judgment*. These constitute all the evidence necessary to show that the appeal had the reversal

of the judgment as its object.    If this sufficiently appears, the form and manner of taking it will not be considered material.

Thus, in *United States* v. *Adams*, 6 Wall. 101, a case from the Court of Claims, the United States simply filed an application for an *appeal in the case*, and it was held sufficient. And in *Hudgins* v. *Kemp*, 8 How. 530, the court said that it was not necessary either to pray an appeal in writing or orally in open court.

In short, causing a citation to be issued is, of itself, the act of appealing, and as that is expressly directed against the judgment, we think it sufficient to bring that judgment before us for review, and the motion to dismiss the appeal must be overruled.

Coming now to the merits of the case, as presented by the bill of exceptions, we find that two questions of fact were before the jury, viz: First, whether the defendant's agents were guilty of negligence that produced the injury ; and, next, whether the plaintiff's own negligence contributed to the result.

On both questions the testimony was conflicting, and in such case it ought, ordinarily, to be submitted to the jury. The trial justice in this case, however, directed a verdict for the defendant, and it must have been on one of two grounds, viz : Either that all the evidence relied on or available for the plaintiff failed to establish a *prima facie* case of negligence on the part the defendant or its agents ; or else, that the evidence for the plaintiff himself showed negligence on his part which contributed to the injury.    It therefore becomes necessary for us to examine the evidence set out in the record with reference to these questions.

The evidence on the plaintiff's part tended to show that at the time when he approached the crossing where the accident occurred, the railroad hands were engaged in coupling a number of empty cars on the west track or a siding, just above F street, an engine being used at the north end of the train to push it backwards over the crossing ; that

the night was dark and stormy ; that there was no light on the rear car and no brakeman on it, and that the brakeman whose duty it was to be there and see that all was right before the train moved, was absent; that the gates were up and a light upon them ; that no railroad men were visible to the plaintiff, and the gateman was in his box, and did not come out until after the train began to move, and just too late to close the gates down so as to prevent the buggy from getting upon the track ; that one of the train hands saw the buggy approaching, and suspected that something might happen, and yet made no attempt to prevent it; and that just as the plaintiff was upon the track, the rear car struck the buggy and broke it to pieces, throwing him out and injuring him severely.

Upon this showing, there could be no question that the neglect of the company's employees was directly responsible for the plaintiff's injuries. It was the plain duty of the train hands to keep a lookout in front of the moving train, and the duty of the gateman to know when the train was to pass the crossing and to protect the public by closing the gates during its movements.

It has been held that in pushing or backing cars at railroad crossings, a company is bound to use extraordinary care to prevent accidents, by sounding suitable signals and taking other fit precautions. See cases cited in note to page 285 of 19 Am. & Eng. R. R. Cases.

But the principal stress in this case is laid upon the alleged contributory negligence of the plaintiff.

Numerous cases have asserted it to be the duty of anyone approaching a railroad to keep a proper lookout and take precautions for his own safety, and not to rely solely on the attention to their duties of the employees of the railroad company. Perhaps no case has declared this more distinctly than *Railroad Company* v. *Houston*, 95 U. S. 697, in which the Supreme Court of the United States say : "The neglect of the engineer to sound the whistle or ring the bell on nearing a street crossing does not relieve the traveler from

the necessity of taking ordinary precautions for his safety. Before attempting to cross, he is bound to use his senses—to listen and look—in order to avoid any possible accident from an approaching train.   If he omits to use them and walks thoughtlessly upon the track, or, if using them, he sees the train coming, and instead of waiting for it to pass, undertakes to cross the track, and in either case receives an injury, he so far contributes to it as to deprive him of any right to complain.

It is important, then, to ascertain how far this duty of vigilance was performed or attempted to be performed by the plaintiff.   According to his testimony, he was driving a quiet, gentle horse, and had slowed down to a walk when he reached the railroad.   He saw no railroad men about, but the gates were up with a light on them.   He had twice before been near being injured at the same place and was very particular every time he crossed there.   On this occasion he looked both north and south ; the night was very dark and stormy ; he saw a car or cars standing north of the crossing, but saw no lights on them and no locomotive, and saw no shifting or moving about, and he heard no signals and did not think it necessary to stop and inquire of the watchman.

It appears also that the cars were on a siding, where it is a matter of common knowledge that cars are sometimes left to stand temporarily, so that these might easily be supposed to be stationary.

When there is evidence that the traveler did exercise his senses of sight and hearing, it is a very nice question how far the court can prescribe a rule of diligence in each particular case ; for it is evident that it must vary according to the circumstances of the case.   It would seem more appropriate that if there is any doubt about the question, or the facts are such as to admit of a difference of opinion, the question of care or negligence ought to be left to the jury.

A case not unlike the present was that of *Sharp* v. *Glushing*, 96 N. Y. 676, the defendant being the receiver of

the Long Island Railroad Co. In that case, it appeared that the plaintiff was approaching Atlantic avenue, in the city of Brooklyn, in a one-horse covered milk wagon and saw a train of cars pass eastwardly and then saw the gateman raise the gates and go into the gate house. He drove on, and at the crosswalk of Atlantic avenue carefully looked both ways, and seeing no train, drove on to the railroad where his horse was killed and his wagon wrecked by a train going west. The court said: " The evidence showed that no bell was rung or whistle blown, and thus the carelessness of the defendant was established. But the claim of the defendant is that the plaintiff should have been non-suited on account of his own carelessness ; and this claim he bases upon these facts: That at the place where the plaintiff looked, about thirty feet from the railroad track, his view was somewhat obstructed, *and that he did not look again while passing the thirty feet,* although during that space his view was unobstructed and he could have seen the train if he had looked. *We think the case as to plaintiff's negligence was properly submitted to the jury. He looked both ways, and whether, under all the circumstances, he should have looked again or continued to look was for the jury to determine..* The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him or invited him to come on, and that any prudent man would not be influenced by it is against all human experience. The conduct of the gateman cannot be ignored in passing upon the plaintiff's conduct, and it was properly to be considered by the jury with all the other circumstances of the case."

In the present case, the obstruction to the view which existed all the way to the track, was the darkness of the night and the driving storm. There was the same absence of signals as in the case cited, and instead of the gates being thrown up and the gateman retiring into his box, in the sight of the plaintiff, the gates were already up and the gateman in his box when the plaintiff approached the road. Substantially the cases seem almost identical.

So in the case of *Howard* v. *St. Paul M. & M. R. Co.*, 19 A. & E. R. cases, 283, the Court said : " The question of the plaintiff's contributory negligence was clearly for the jury.   Of course, in approaching a railroad crossing to cross it, a man must make use of his sight and  hearing to ascertain if it is safe to cross.    But if, upon diligently using them, he does not learn of approaching danger, it cannot be negligence to make the crossing.    Plaintiff swears that he both looked and listened, and neither saw nor heard the approaching cars till too late to escape.   *   *   *   If the jury were satisfied—and from the evidence they might have been—that the plaintiff looked and listened when he was about fourteen feet from the track, and saw and heard nothing, it was for them to determine whether, under the circumstances, it was negligent in him to assume that he could walk that distance without danger."

It is true, in the present case, that the plaintiff is contradicted by the testimony for the defence in important particulars, and it may be that the trial justice correctly estimated the *weight* of the plaintiff's testimony ; but we think that his testimony, taken by itself, at least presented so probable a case of diligence that he was entitled to have it weighed by the jury, as against the opposing evidence, and to have them determine its sufficiency of the issue of contributory negligence.    *The judgment below is therefore reversed and a new trial ordered.*